Weldon, J.,
delivered the opinion of the court:
On the 3d day of August, 1892, the claimant filed a petition in which it is alleged, that the petitioner, Johnson Black-feather, brings suit as the principal chief of the Shawnee tribe or nation of Indians under the provisions of an act of Congress entitled “An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes,” approved October 1, 1890 (26 Stat. L. 636), and made said act an exhibit and part of his petition. -
It is further alleged as a basis upon which the suit is brought, that to said act there is a certain amendatory act entitled “An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and freedmen, and for other purposes,” approved July 6, 1892 (27 Stat. L. 86), which, act is also made an exhibit.
It is further alleged, that under and by virtue of the provisions of said acts, there is a liability against the United States for depredations committed by white citizens of the United States in the State of Kansas and the Indian Territory upon the property of said Indians at divers times and places in the year 1861, and up to and including the year 1866, amounting in the aggregate as damages to the sum of §>109,746.25, as ascertained by the Secretan' of the Interior in January, 1867, shown in Exhibit D. An exhibit is then made of the different amounts claimed by other individuals represented by the petitioner, amounting to the sum of $530,945.14, as shown in Exhibit B, made part of the petition!
The alleged depredations consist of the taking and destruction of property by the w'hite citizens of the United States belonging to the different Indians represented in the petition, which property consists of horses, mules, clothing, and other and different varieties of personal property.
It is alleged that said claims arise out of treaty obligations with the United States, to wit, articles 11 and 14 of the treaty of May 10,1854, and sections 2154, and 2155, of Revised Statutes; that the property was taken from said Shawnee Indians, and depredations committed against them and their property, by said white citizens and soldiers of the United States since and after the time said Indians made and entered into said *238 treaty of May 10, 1854, and while the Indians were located and permanently residing and living peaceably on their own lands in the Indian Territory, to wit, in the year 1861, up to- and including the year 1866.
It is further alleged that the said Indians have not, either as individuals or as a nation, sought to be revenged, nor have they or any of them attempted to obtain satisfaction on account of the taking of said property.
To the said petition the defendants have filed a demurrer, in which it is alleged as a ground of demurrer that the petition is sufficient, (1) because it appears upon the face thereof that the court has no jurisdiction, and (2) because said petition does not allege facts sufficient to constitute a cause of action in this regard.
The eleventh section of the treaty of 1854 (10 Stat. L., 1053), upon which is predicated the claim of the petitioner, is in substance that, it being represented that many of the Shawnees have sustained damage and loss by reason of emigration passing through their country, and because of other causes, in violation of the guaranties made for their protection by the United States, it is agreed that there shall be paid as consideration to the Shawnees the sum of $27,000, to be taken and considered in full satisfaction of such claims and all others of whatever kind, and release all demands and stipulations arising-under former treaties, except the perpetual annuities; and all Shawnees who have sustained damage by said causes shall, within six months after the ratification of the treaty, file claims for such damages with the Shawnee agent, to be submitted by him; and the amount in each case approved shall be paid by such agent, provided the whole amount of the claims thus appi-oved shall not exceed the said sum stipulated; and provided further that if such amount shall exceed the sum, then a reduction shall be made pro rata from each claim until the aggregate is lowered to that amount.
Article 14 of the same treaty provides, in substance, that the Indians acknowledge their dependence on the Government of the United States, and invoke its protection and care; that they will abstain from the commission of depredations, and comply, as far as they are able, with the laws in such cases *239 made and provided, as they will expect to be protected and to have their rights vindicated.
It is insisted by the defendants that the court has no jurisdiction, unless it bo by virtue of the acts of 1890, and 1892, because the claims arose between 1861 and 1866, and are long since barred by the statute of limitations.
It will be seen by the allegations of the petition that the action is not brought to recover a sum due the Shawnee tribe, but as a proceeding to enforce an obligation against the Government for the payment of personal losses of individual Indians.
The aggregate amount claimed in Schedule B, of losses embraced in the petition is the sum of $530,915.11; it is alleged with reference to such claims that they arise out of treaty relations with the United States, as rights growing out of such treaties, to wit, articles 11 and 11 of the treaty of May 10, 1851, and sections 2151 and 2155, Revised Statutes, that the property so described was taken from the Shawnee Indians individually-, that the depredations committed were against them by w-hito citizens and soldiers of the United States since the making of the treat}'' of May 10, 1851.
The claim of the petitioner, according to the allegations of the petition, is founded upon the liability assumed by the defendant in the eleventh and fourteenth articles of the treaty of 1851; and the right of action, which is by the petition prosecuted, is founded by the two acts of Congress aforesaid, to wit, that of 1890 and that of 1892.
A very able argument was made by counsel for the claimant to maintain the right of each individual Indian, under the acts aforesaid, to prosecute his individual right in and through the medium of the plaintiff in this cause, who is the principal chief of the Shawnee Indians. Confining the discussion to the right to bring suit in the form of the petition, it is not pretended that the Indians in their tribal or aggregate capacity as an entity were damaged by the alleged depredations of the persons stated in the petition. That being true, one of the questions presented for the determination of the court is as to whether a petition framed upon the theory of the individual right of the Indian can be maintained under the provisions of those statutes.
*240 The act of 1892, seems to have been enacted for the purpose of enlarging the scope of the right given under the act of 1890. But is it sufficiently broad to embrace the individual right of each Indian who may have suffered a depredation at the hands of the persons alleged ?
The statute is entitled “An act to refer to the Court of Claims certain claims of the Shawnee and Delaware Indians and the freedmen of the Cherokee Nation, and for other purposes,” and provides, in substance, that they shall present to the said court all their claims against the United States and the Cherokee Nation, or against either or both of them, of anjr description whatsoever arising out of treaty relations with the United States, lights growing out of such treaties, and from contracts, express or implied, under such treaties made and entered into by and between the said Shawnees and Cherokoes, and between them, or either of them, and the United States.
The right to sue, by the phraseology of this statute, is in the assertion of rights growing out of treaties, and for contracts, express or implied, under treaties made • and entered into by and between the said Shawnees, Cherokees, and the United States. Can it be said that there has been a treaty, a contract, express or implied, between the United States and the individual Indians, who, through the medium of the principal chief, are now prosecuting these claims ?
The attention of the court is called to the fourteenth article, which provides that “The Shawnees acknowledge their dependence on the Government of the United States, and invoke its protection and care. They will abstain from the commission of depredations, and compty, as far as they' are able, with the laws in such cases made and provided, as they will expect to be protected and to have their rights vindicated.” Does this phraseology establish contractual or treaty relations, having the effect of contracts, with each individual Indian composing the Shawnee tribe? Or, rather, is it not a general clause, limited in its effect to the parties to the treaty, to wit, the United States on one side and the Shawnee tribe upon the other?
The plaintiff, by the allegations of the petition, has asserted an individual obligation existing between the United States *241 and each of the claimants, and in order to recover it must appear that such a relation exists.’
The United States, as the guardian of the Indians, deal with the nation, tribe, or band, and have never, so far as is known to the court, entered into contracts, either express or implied, compacts, or treaties with individual Indians so as to embrace within the purview of such contract or undertaking- the personal rights of individual Indians.
The acts of Congress referred to by the allegations of the petition and the argument of counsel for the claimant, are not applicable to the claim made by this petition. The condition upon -which remuneration to the Indian is to be made under section 2154, Revised Statutes, is not shown to exist in this case. And so it may bo said of section 2155 of Revised Statutes, that the condition upon which the Indian is entitled to remuneration out of the Treasury is not shown to exist in the claims made in this proceeding.
The act of 1892 specilies that the Shawnee tribe or band of Indians, whose claims and demands against the Cherokee Nation and the United States were referred to the United States Court of Claims for adjudication under the act of Congress passed and approved October 1, 1890, shall present to said court all their claims against the United States. The claims referred to this court under the act of 1890 were the claims of the Shawnee tribe or band of Indians, and not the personal claims of the individual Indians belonging to said tribe or band of Shawnees.
The evident object of the act of 1892 was to enlarge the jurisdiction of this court with reference to the same class of claims as were cognizable under the act of 1890, to wit, the claims of the Shawnee tribe or band of Indians.
It is insisted by defendants’ counsel that the statute of limitations bars the right of proceeding. In the view which the court has taken of this case it is not necessary to pass upon that question. The act of 1892 was before the Supreme Court of the United States in the case of United States v. Blackfeather (155 U. S., 180), and in that case the Supreme Court said in substance that it was by no means certain that, under the acts of 1890, and 1892, the Shawnees were authorized to recover and collect from the Government any other moneys *242 than those which were claimed in their tribal relation. The money in question was not due the tribe as such, but to certain individual orphans who claimed to have been defrauded.
It may have been unnecessary for the Supreme Court in the decision of the question involved in that proceeding to pass upon the individual right of the Indian, but the court, in dealing with the question involved in that proceeding, has expressed an opinion indicating the proper construction of the act of 1892, with reference to the rights of the United States and the Indians.
But, waiving all criticism on the form of the proceeding, the fundamental question is, as to whether, under the treaty of 1854, and the Kevised Statutes cited bj^ the claimant, anjr right exists to recover against the United States, founded either upon the treaty or the statutes.
The eleventh article, as has been stated, provides for the payment of a specific amount upon the condition that the claims arising under said section shall, in the aggregate, amount to that specific sum, and that in case such claims do not aggregate that sum, the residue shall be appropriated as the council of the Indians shall direct. That sum has been paid, and this proceeding is not based upon any liability of the United States for the nonpayment of any portion of that amount.
In the argument herein it was insisted bjr claimant’s counsel that the fourteenth section, acknowledging the dependence of the Indians and their obligation to abstain from depredations, and the guaranteed protection to the Indians, constitutes a legal basis upon which the claims can be maintained, assuming that the act of 1892, gave the right of action in this court.
The general guaranty of the Government to protect the Indians, in consideration of their submission to the law, is not sufficient, in the opinion of the court, to constitute the basis of the claim alleged and sought to be maintained by this petition, nor is the right given under the Revised Statutes; and therefore the demurrer is sustained.